NEWYORK,
May, 1816.

OVERSEERS OF
HUDSON
v
OVERSEERS OF
TAGHKANAC.

*The Overseers of the Poor of the city of* HUDSON *against The Overseers of the Poor of the town of* TAGHKANAC.

TWO justices of the peace of the town of *Taghkanac*, in the county of *Columbia*, had made an order for the removal of *Elizabeth Heydon* and her four children, paupers, from that town to the city of *Hudson*. From this order the overseers of the poor of the city of *Hudson* appealed to the court of general sessions of the peace of the county of *Columbia*, which, at its session in *May*, 1814, confirmed the order of the justices. From the return to a *certiorari* to the court of sessions, the following facts appeared:

About forty years ago, one *Catreen Race*, an inhabitant of the town of *Livingston*, in the county of *Columbia*, charged one *Adam Heydon*, a freeholder and inhabitant of *Hudson*, with being the father of a bastard child with which she was then pregnant. *Heydon* married her, but refused to cohabit with her, and she continued to live in *Livingston* and he in *Hudson*, where he still resides. Three months after their marriage, *Catreen Race* was delivered of a male black child, (both parties being white persons,) which *Heydon* refused to acknowledge. The child went by the name of *William Heydon*, and was, when about two years old, bound out by his mother, who alone signed the indenture, to one *Phillips*, a mechanic, and inhabitant of *Livingston*, until he should arrive to the age of 21. The child continued with *Phillips*, under the indenture, six years in the town of *Livingston*, and about twenty months more in that part of *Livingston* which is now *Taghkanac*, and then removed with his master into the state of *New-Jersey*, where he completed his term of service, and then returned to *Taghkanac*, where he married and died, leaving a widow and four children, the paupers in question.

Upon these facts the court below decided that *William Heydon*, being born in lawful wedlock, was the child of *Adam Heydon*; that his residence followed his father's, and was, therefore, in *Hudson*; and that having gained no legal settlement elsewhere, his widow and children were chargeable to *Hudson*. The admission of evidence as to the colour of *William Heydon*,

A binding by a voidable indenture, and a service under it for two years, gives the apprentice a settlement in the town in which he served; and it is not competent for the town to object to the validity of the binding.

NEWYORK,
May, 1816.

OVERSEERS OF
HUDSON
v.
OVERSEERS OF
TAGHKANAC.
and his offspring, was objected to, but the objection was over-ruled by the court below.

*Bay*, for the plaintiffs in error, contended, that the fact of non-access by the husband, which was to be proved like all other facts, was sufficient evidence of the illegitimacy of a child born after marriage. So the fact of the child being black was, unless the laws of nature were reversed, equally strong to prove its illegitimacy.

Being illegitimate, the child follows the condition of the mother.

Here was no interference by the overseers of the poor, at the time the child was born, nearly 40 years ago. The husband refused to have any concern with it. The mother was obliged to support the child, and, if necessary, she might bind him to service. It is true that the contracts of a *feme covert* are void, as to all things in which the husband can have any interest. This case is peculiar. It is probable that such an instance never before existed. The husband denied that the child was his, and refused to interfere in the care of it. If the indenture was void, it was only as against him. If he assented to the indenture, the overseers of the poor could take no advantage of any informality in it. From his silence and acquiescence, his assent to the the act must be presumed. The town can take no advantage of any defect in the indenture. It was so decided in the case of *Rex* v. *The Inhabitants of St. Nicholas*, in *Ipswich*, reported in *Burr. Sett. Cases*, 91. case 28.

Again, under the colonial law, the settlement of the child followed the place of its birth.

*E. Williams*, contra, contended, that *William Heydon*, being born of the wife of *Adam Heydon*, a freeholder and inhabitant of *Hudson*, must be deemed to have belonged to *Hudson*. The domicil of the wife is that of her husband. The court below were the best judges as to the colour of the children, whether it was of that degree of blackness as to render it certain, or probable, that *Adam Heydon* was not the father of *William Heydon*. This court cannot have the same evidence before them.

Then, was there a valid indenture of *William Heydon* to service? The binding must be by writing, and by the father of the child, or by the overseers of the poor. The mother, being

a married woman, had no power to sign the indenture. True, she is the natural parent and guardian; but the law has declared, in the case of bastardy, that the overseers of the poor, for the purpose of binding to serve, shall be the parents of the child. The indenture, to be legal and valid, must be such a one as, if necessary, could be enforced.

NEW-YORK,
May, 1816.

OVERSEERS OF
HUDSON
v.
OVERSEERS OF
TAGHKANAC:

YATES, J., delivered the opinion of the court. If the return had stated that *Catreen Race*, a white woman, had been delivered of a mulatto child, instead of a black child, there could be no question on the subject of illegitimacy, because it would have appeared impossible for *Adam Heydon*, a white man, to have been the father; and the law, in such case, would pronounce the child a bastard; the presumption in favour of its legitimacy, being destroyed by satisfactory proof rendering it impossible to be the husband's child. (1 *Roll. Abr.* 358.) Though the description of the child is not as definite as it might have been, yet, I am inclined to think, that enough appears, according to the common acceptation of the language made use of in the return, to show the real situation of it; for, it must be admitted, that, in common parlance, a black child means a negro, or mulatto child, and giving either of those significations to the terms used in the return, would produce the same result as to its illegitimacy; but, whether *Catreen Race* was delivered of a legitimate or a bastard child, is rendered immaterial, as respects the liability of the overseers of *Hudson*, because the return states, that the child was bound out in the present town of *Livingston*, to one *Phillips*, with whom he remained, in that place, six years, and then went with his master to that part of *Livingston* called *Taghkanac*, and continued there twenty months, or until he went with him to *New-Jersey*. His last place of residence, therefore, in this state, was *Taghkanac*; but the binding, and first inhabitation, under the indenture, were in the town of *Livingston*. By the colonial law, (*Van Schaick's* ed. 752.) if any person was bound an apprentice by indenture, or by deed, writing, or contract, not indented and inhabited in any city, town, parish, precinct, or district, such binding and inhabitation was adjudged a good settlement. The child, in this case, was bound in the present town of *Livingston*, and the binding and inhabitation together had taken place in the same town, and not in *Taghkanac*; so that, according to the principles contain-

NEWYORK,
May, 1816.

OVERSEERS OF
HUDSON
v.
OVERSEERS OF
TAGHKANAC.

ed in the decision of this court, (3 *Johns. Rep.* 193.,) with regard to the effect of the division of towns as to subsequent paupers, the town of *Livingston* would be chargeable with the maintenance of the paupers in question; and if *William Heydon* could even be deemed legitimate, yet the apprenticeship stated was sufficient, under the above colonial law, to exonerate the overseers of *Hudson;* for it cannot be doubted, but that the binding of the child, by the mother, under the circumstances of this case, must be deemed competent to create a settlement under the above act; because the indentures of apprenticeship, although not signed by *Adam Heydon*, continued operative during the whole term of service, from the time the child was two years old, until he arrived at the age of twenty-one years; so that *Heydon's* assent, in fact, proved unnecessary, and his subsequent acquiescence (if it had been necessary) is conclusive evidence of such assent.

If *Adam Heydon* had objected to the binding, and rendered the contract, or indenture, inoperative, for any period of time during the apprenticeship, the overseers of the town of *Taghkanac* might have been justified in the attempt to make the overseers of the poor of *Hudson* chargeable; but the full and entire service having been rendered, according to the indenture, the objection taken by them ought not to prevail; it is sufficient that there has been a substantial compliance with the intent and meaning of the act of the colony. According to the principles laid down by Lord *Hardwicke*, in *Rex* v. *The Inhabitants of St. Nicholas, in Ipswich, (Burr. Sett. Cas.* 91. No. 28.) the town cannot be allowed to take advantage of the alleged defect in the indentures. It is enough that no interruption, for so long a term of service as this case presents, has taken place; and the binding and inhabitation of the apprentice, under the contract and indentures, according to the colonial law, created a settlement which the return states to have been in the town of *Livingston*. The overseers of *Hudson* are, therefore, exonerated from the maintenance of his widow and children, the paupers in question. The judgment of the court below must, consequently, be reversed, and the order of the justices quashed.

Order of the sessions quashed.