Gaston, Judge.
 

 After stating the case proceeded : This case involves several questions of an interesting character. There is a numerous and helpless portion of the community subject to the operation of those laws which create an involuntary obligation of service, and it is of high importance that these laws should receive such a construction as will protect them from oppression and injury, while at the same time it secures the rights of their temporary masters. The 19th and 20th sections of the act of 1762,
 
 fRev. c.
 
 69) contain the principal enactments which authorise and direct the County Courts to bind out apprentices, and regulate the mode in which this power shall
 
 be
 
 exercised. They direct that when the estate of an orphan shall be of so small value that no one will educate and maintain him or her for the profits thereof, such orphan shall by the direction of the court be bound -apprentice, every male to some tradesman, merchant, mariner or other person approved by the Court, until he shall arrive at the age of twenty-one years, and every female to some suitable employment till her age of eighteen years. They also declare that such court may in like manner hind apprentice all free baseborn children, the female child of a mulatto or mus-tee until she shall attain the age of twenty-one years
 
 ‘,
 
 that the master or mistress of such apprentice shall find and provide for him or her diet, clothes, lodging and accommodations fit and necessary, shall teach, or cause him or her to be taught to read and write, and at the expiration of the apprenticeship, shall pay every such apprentice the like allowance as is by law appoints ed for servants by indenture or custom. The act then enacts that the binding of such apprentice by order of Court shall be by indenture, to be made in the name of the presiding acting Justice and his successors of the one part, and the master and mistress of the other; that this indenture shall be acknowledged or proved in court and recorded, and a counterpart be kept in the clerk’s office for the benefit of the apprentice,; and. that the per.
 
 *64
 
 SOU injured may prosecute a suit thereon in the name of such Justice or his successors, and recover all damages sustained by reason of the breach of the covenant therein contained. The court entertains no doubt but that it is indispensable that every binding of an apprentice by order of court must be by indenture. This is demanded by the plain words of the act, is consistent with the adjudications in our country, and in conformity with the law and usages which obtained in England respecting the binding of apprentices generally, aud probably prevailed here before the passing of the act of
 
 17&-Z.
 
 An order of court therefore, not carried into execution by an indenture must be regarded as absolutely null. It is very clear too that in order to execute the requisitions of this act, tiic indenture ought to contain covenants for the performance of each and every of tiie duties which the law enjoins, and for the nonperformance of which it gives a remedy by suit on the indenture. It may be unnecessary to insert on the indenture a covenant for the payment to the apprentice at the expiration of the term of apprenticeship “of the like allowance as is by law appointed for servants by indenture or custom,” because the very section which imposes this obligation on the master adds immediately thereafter, “ that
 
 on
 
 refusal he shall be compelled thereto in like manner,” and upon looking into the act of
 
 Í741
 
 in relation to servants, we find that all their complaints may be received on petition in the court of the county wherein thoy reside without the formal process of an action. But for a violation of the oilier duties enjoined, the remedy contemplated by the act, is by an action in the name of the presiding Justice or liis successors on the indenture, in which actions damages are to be recovered for the breach of the covenants contained in that indenture. But what discrepancies between the indenture required, and that given, shall make the instrument
 
 ipso facto
 
 null, or prevent the relation of master and servant from being created — what shall render the indenture voidable, or authorise a dissolution of the relation — and when such indenture is voidable by
 
 *65
 
 whom, and in what manner it shall be avoided, are en-quiries of much moment,' and perhaps of some difficulty.
 

 
 *64
 
 Every binding of an apprentice under the act of 1762, must be by indenture.
 

 And every obligation thereby imposed upon the master which is to be vindicated by an action, must be the subject of express stipulation
 

 But it is otherwise with the payment of the al lowance appointed for servants,because the remedy for its non-payment is by petition-
 

 
 *65
 
 An official bond to an officer appointed to taltó it, vests upon hi's death or resignation, in Ms successors, although they are not named in it.
 

 The indenture which was executed in this case is set forth, and many objections have been urged against its validity. In the first place, it is objected that the act of 1762, requires that the indenture shall be made “in the name of the presiding justice and his successors of the one part, and the master of the apprentice, of the other part; and that this instrument purports to have been made between “the chairman of the county court of Moore on behalf of the justices of said county, and their successors in office of the one part and
 
 Cornelius Dowd,
 
 of the other part.” It is certainly always to be desired that office bonds should correspond precisely with the forms prescribed
 
 ;
 
 ami immense and unexpected inconveniencies have frequently resulted from carelessness in this respect. Here is a double deviation from the act. The indenture does not name as it ought, the successors of the chairman, and it names what it ought not, the successors of the justices. The word
 
 “
 
 their” immediately preceding the word “successors” has been improperly inserted instead of the word “ his.” But this objection is not as formidable as it appears.— The words “their successors in office” as here used, have no operation and no meaning. The Chairman acting in behalf of the justices of the County Court can act
 
 only
 
 in behalf of the then justices. Those who may thereafter succeed or be appointed, may indeed be bound by this act; not however, because it is
 
 their
 
 act, but because it was a legitimate act, authorised by their predecessors, and conferring rights which all are bound to acknowledge. These words therefore may be rejected altogether as nugatory and without object or meaning. This objection then to the indenture, becomes restricted to the omission of the words “his successors.” But it was decided many years since, and so far as we can find precedents on this subject, we are solicitous to follow them, that in bonds taken under this act, the insertion of these words is unnecessary, for that wherever an engagement is entered into by a public officer for the
 
 *66
 
 benefit of others in his official character, and by the appointment of law. such contract attaches to him in that character only, and when he is divested of that character, it belongs to his successor,
 
 (Anonymous,
 
 1
 
 Hay.
 
 146.) According to this construction then, the indenture is made with the chairman and his successors, although the successors be not named.
 

 The Anonymous case,
 
 (l Hay.
 
 146,) approved.
 

 An indenture of apprenticeship which does not conform to the act of 1762, is not absolutely void, but only voidable by the parties to it.
 

 But it is further objected that this indenture does not specify “the suitable employment” to which this female ■should be bound, nor does it contain any covenant on the part of the master for teaching, or causing her to be taught to read and write. These matters ought to have been inserted in the indenture, and the omission of them constitutes a very serious objection to the instrument.— We have no adjudications in our own State to guide us in deciding what is the effect of such omissions. Thus circumstanced we have deemed it our duty to enquire into the decisions which have taken place in analogous cases in England, upon the statutes which existed there before our ancestors left that country, and which have, been kept in view by our Legislature in the provisions of their act of 176é. By the statute 5
 
 Eliz.
 
 c. 4 divers rules and regulations are enacted respecting the qualifications of persons entitled to take, and to become
 
 apprentices;
 
 respecting also the length of time for which the apprentice shall be bound, and the mode of binding such apprentice; and in the 41st-section it is expressly declared “that all indentures for taking any apprentices otherwise to be made than by that statute is appointed, shall be clearly void in the law, to all intents and purposes.” Under this statute several cases have occurred, as well between the parties to the indentures, as between one of them and third persons, or as between third persons altogether, where the indentures have departed from the statute quite as widely as this departs from the act of
 
 1762,
 
 and where it was held that the indentures were not absolutely void, but liable, to be made void. A leading case is that of
 
 Rex
 
 v.
 
 Inhabitants of St. Nicholas, in Ipswich,
 
 which was decided in 1736 by the court of King’s Bench, when
 
 Lord
 
 Hard-
 
 *67
 

 iui.cke
 
 presided there, and which is referred to in the later cases as of undoubted authority. We find a Re- port of it in
 
 Fetersdoff’s Mridgment, (Title apprentice, B. c.
 
 3.) A dispute had arisen between two
 
 parishes in
 
 regard to the alleged settlement of
 
 James Blythe,
 
 a pauper. By the statute
 
 3d
 
 &
 
 4th
 
 of
 
 William
 
 &
 
 Mary
 
 it is ordained that if any person be bound an apprentice by indenture, and inhabit in any town or parish, such binding and inhabitation shall be adjudged a good settlement therein. Among the requisitions of the statute 5
 
 Elia,
 
 there is one that in a city or a town corporate, the binding shall be
 
 for seven years at least. Blythe
 
 had entered into indenture to a master in the incorporated town of Ipswich for four years only, and it was insisted that the indentures were clearly void to all intents and purposes, that
 
 Blythe
 
 had not been bound an apprentice by indenture, and that no settlement could be acquired by an inhabitation under such a pretended binding. The court felt and acknowledged that the words of the 41st section were very strong, but nevertheless, held that the indentures were not absolutely void, but voidable only by the parties, if they choose to raise this objection against them. In coming to this conclusion the Judges declared themselves not a little influenced by the consideration that if a want of any single qualification required by the statute, made the indenture absolutely void, there probably v'as not a valid settlement acquired under an indenture for fifty years past. This decision has since been followed by many of a like kind in England, and has been sanctioned in the Supreme Court of New-York in the case of
 
 Overseers of Hudson
 
 v.
 
 Overseers of Taghkunac,
 
 (13
 
 Johns.
 
 245.) Upon the authority of these decisions, we feel ourselves justified in holding,thattlievariancebetweenthestipulationscontain-ned, and those which ought to have been contained in the indenture before us, do not annul the instrument so as to prevent the relation of master & servant from having been created by
 
 it;
 
 and we rejoice that we can thus decide, as we perceive that this defective instrument is copied from a form which is found in
 
 Haywood’s Justice,
 
 a book of
 
 *68
 
 general use in this State, and there is great reason to fear that most of the indentures recently taken are equal-]y faulty. The consequences which would result from considering all of them as nullities might be extensively mischievous.
 

 
 *67
 
 the relation of ™a(ttel and Such an in- : denture as to strangers, cr.-ate.ij
 

 
 *68
 
 But the ap-par^to
 
 it,
 
 and
 
 it seems
 
 that it. can by^the6 county*1 cowt'
 

 The next question that recurs is, if this indenture he voidable, had not
 
 Lydia Burnett
 
 a right to avoid it, and has she not exercised that right, and vacated the indenture by withdrawing herself from
 
 the
 
 service of the Of the plaintiff? This directs our attention more directly to the point on which the court ordered a non-suit. The Judge held that the voluntary abandonment of the plaintiff’s service by
 
 Lydia
 
 after her arrival to years of discretion, put an end to this voidable, relation of master and apprentice. It is plain that the Judge did not mean by the phrase “ arrival at years of discretion,” the arrival at the full age of twenty-one years. The indenture would expire by its own limitations at that time. He meant her obtaining an ago in which she could be supposed to have the capacity to discern what was for her own good.
 

 Now, it is to be remarked that
 
 Lydia Burnett
 
 was not a party to this indenture. There is an important difference between the parties to an indenture under the statute of
 
 5th Elizabeth,
 
 and the parties to an indenture of apprenticeship under our act of
 
 1762.
 
 To an indenture under that statute the infant and the master are the parties; but to an indenture with us, the chairman °f the court and the master arc the parties. In this respect our indentures much more nearly resemble those which are taken in England on the binding of parish apprentices by church wardens, under the
 
 Stat.
 
 43,
 
 Eliz. c.
 
 2, and subsequent statutes, than those we have been considering. If the indenture in question be voidable at the election of the parties thereto, or of that party who can object to it as defective or irregular, it seems to us that the act of avoiding it must be done not by the apprentice, but by the County Court or its Chairman.— Nor is this to be regarded as a technical distinction.— In its principle and its consequences it seems necessary
 
 *69
 
 for following out the scheme of the Legislature, and for taking proper care of the interests of the apprentice.— Were the power of vacating the indentures to rest with him during his minority, he might he seduced into an unfit service, and lured away to vice and idleness and ruin. The power of dissolving the connection would seem more appropriately to belong to those who had been entrusted with the power of forming it. In the case of orphans whom death has deprived of their natural protectors, and of illegitimate children who never had any, the law regards the court of the county as charged with their care and protection.
 

 And if the ap prentice be *¡ party to it, an avoid anee of it by him must be by a formal act with notice of the in tent. Neither he nor a stranger can allege an abandonment of the service as an avoidance.
 

 But if the. infant apprentice were to ho regarded as in truth one of the parties to this indenture, yet it does not follow that an abandonment of the master’s service avoids the indenture. It is we think fully settled, and wisely settled, that where an apprentice can himself avoid a voidable indenture be must do so by some formal and autbcntick notice of bis intention to dissolve the contract, and that it will not do when lie is called on to answer for misconduct, such as quitting his master’s employment, to allege his very offence as an apology, on the ground that it was done with intent thereby to avoid the indenture; nor can the third person who has harbored or maintained him, set up the misconduct of the apprentice as a justification for his invasion of the rights of the master
 
 defacto.
 
 The cases which we think conclusively establish this doctrine are those of
 
 Rex
 
 v.
 
 Evered
 
 (cited in 16
 
 East.
 
 27,)
 
 Archcroft
 
 v.
 
 Bertles
 
 (6
 
 Term.
 
 652,)
 
 Grey
 
 v.
 
 Cookson,
 
 (16
 
 East.
 
 13,)
 
 Smedley
 
 v.
 
 Gooden,
 
 (3
 
 M.
 
 &
 
 Sel.
 
 189,) and
 
 Barber
 
 v.
 
 Dennis
 
 (6
 
 Mod.
 
 69.)
 

 Upon the whole, the court is of opinion that the non-suit was improperly ordered, and will therefore direct it to be set aside and a new trial awarded. At the same time it feels it a duty to call the attention of the Justi--ces not only of Moore county, but of all the counties in the State, to the indentures which have been taken from the masters of apprentices, so that*wherever they are defective, new ones may be required, stipulating for all the obligations which ought to be found in them, and on
 
 *70
 
 failure of tlie masters to comply with such requisition, to cause the indentures to be vacated, and the anpren-tices placed with new masters under regular indentures. They will remember also that with .respect to colored apprentices the law requires a bond to be given, not to remove them out of the county, and to produce them before the court at the expiration of their term of service.